# Beggs *v.* Edison Electric Illuminating Company.

*Bill in Equity for an Accounting, and to Recover Money Fraudulently Obtained.*

1. *Accounting in equity; complication, how alleged.*—A bill in equity for an accounting, where the account to be examined is on one side only, and no necessity for a discovery is shown and no discovery is prayed for, cannot be maintained, unless there is so great a complication in the matters of account as to render the remedies at law inadequate; and, in such case, a mere general allegation that the account is complicated, without showing in what respect, is insufficient.

[Beggs v. Edison Electric Illuminating Co.]

2. *Electric light companies are "manufacturing corporations,"* within the meaning of the statute (Code, § 1565) authorizing the consolidation of manufacturing corporations.

APPEAL from the City Court of Birmingham, in Equity. Heard before the Hon. W. W. WILKERSON.

The bill in this case was filed by the Edison Electric Illuminating Company, a corporation, against Hamilton T. Beggs; and it alleged that said Beggs had been the treasurer and general manager of the Merchants Electric Light and Power Company, a corporation, before the consolidation of that company with the complainant; that, as such treasurer and general manager, he received and disbursed all the moneys and other property of said company, and transacted all its business; that he has not accounted for the moneys received and disbursed by him; that he credited himself with the payment of debts of said company, which were in fact not paid by him; that without authority from said company he took from its funds three thousand dollars, which he retained as salary for himself; and that he is indebted to the complainant to the amount of four thousand dollars or more. The object of the bill is stated in the opinion. The defendant demurred to the bill, and assigned the following grounds of demurrer: "(1.) Said bill of complaint shows on its face that the complainant has no right to maintain this suit. (2.) Said bill fails to show that the original Edison Electric Illuminating Co., a body corporate, and the Merchants Electric Light and Power Company, a body corporate, were ever lawfully consolidated. (3.) Said bill, in stating that the statutes in reference to the consolidation of said companies have been in all things strictly complied with, is not a statement of facts, but merely a conclusion of the pleaders. (4.) Said bill fails to present such case of entanglement or complication in the account kept by defendant as would give the court jurisdiction. (5.) Said bill fails to show any mutuality in the account sought to be taken. (6.) Said bill shows on its face that if the complainant is entitled to the $3,000.00 alleged to have been appropriated by defendant, its remedy for recovery thereof is at law, and not in equity. (7.) Said bill fails to allege facts showing that any discovery is needed in this cause. (8.) Said bill fails to allege, in clear and distinct terms, any reason for the interposition of a court of equity, to establish any claim complainant may have against the defendant. (9.) The bill shows on its face that complainant has a clear and adequate remedy at law. (10.) It is not alleged in said bill that the answer of the defendant is essential for com-

plainant to ascertain the true account between plaintiff and defendant, and that the defendant is capable of making the discovery needed." There was a decree overruling the demurrer. The defendant appeals from that decree, and now assigns it as error.

LANE & WHITE, for appellant, cited *Mayor and Aldermen of Wetumpka v. Winter*, 29 Ala. 651; *People v. New York Floating Dock Co.*, 92 N. Y. 487; *Dudley v. Jamaica Pond A. Co.*, 100 Mass. 183; *Guice v. Parker*, 46 Ala. 616; *Dickinson v. Lewis*, 34 Ala. 643; *Knotts v. Tarver*, 8 Ala. 743; *Sumpter Co. v. Mitchell*, 85 Ala. 318; *State v. Bradshaw*, 60 Ala. 239; *Dallas Co. v. Timberlake*, 54 Ala. 403.

JAS. H. LITTLE, *contra*, cited Code, § 1565; *Nassau Gas Co. v. Brooklyn*, 89 N. Y., 409; *Kirkman v. Vanlier*, 7 Ala. 224; *Dallas Co. v. Timberlake*, 54 Ala. 403; *Halstead v. Rabb*, 8 Port. 63; *Bullock v. Governor*, 2 Port. 484; 3 Pomeroy's Eq. Jur. § 1421; 1 Story's Eq. Jur. 464.

STONE, C. J.—Courts of equity have, for a long time, exercised a general jurisdiction in cases of mutual accounts founded in privity, upon the ground of the inadequacy of the remedy afforded by the common law. And this equitable interposition has been extended until equity will now entertain suits for accounts in matters which were formerly only cognizable at law. The ancient common-law action of account being so imperfect in its processes, and so inadequate in its remedies, jurisdiction in such matters was originally given to equity, for the reason that the common law courts could not give any remedy at all, or the remedy was not as complete as that furnished by the Chancery Court. As courts of equity now entertain concurrent jurisdiction with the courts of law, in matters of accounts, a decision as to the proper tribunal must be governed by considerations of convenience and adequacy; and this is determined by the facts pertaining to each individual cause of action, and the relief sought.—1 Sto. Eq. Ju., § 457.

As said above, where the accounts are mutual, and founded in privity, the jurisdiction of equity is undoubted. But where the accounts to be examined and stated are on one side only, the allegations of the bill must show the existence of certain conditions which are prerequisite to the exercise of equitable jurisdiction. There must either be so great a complication in the matters of account that a common-law court is unable to ferret them out, or there must be the

allegations of such facts as show the necessity for a discovery, and this discovery must be prayed for.    The reason for this rule is evident.    For, in going into courts of equity, one is met at the threshold with the enquiry, can complete and adequate remedy be obtained in a court of law?    If this question be answered in the affimative, the litigant must retrace his steps, unless the allegations of his bill show that the matters involved come within the exclusive jurisdiction of equity.

The object of the present bill, as gathered from its allegations and the prayer, is the stating of an account between the complainant corporation and the defendant, and the obtaining of a decree against the defendant for three thousand dollars, which is alleged to have been obtained by the defendant through fraud.    There are general allegations in the bill of complication in the accounts between the defendant and the Merchants' Electric Light & Power Company, with which company complainant consolidated before the filing of the present bill.    But there is no such particularity in these allegations as show in what way, and in reference to what matters, the accounts between the defendant and the company are complicated.    There is no prayer for a discovery, nor does the frame of the bill disclose that a discovery is necessary.

It is now the settled doctrine of equity jurisprudence, that when the accounts to be examined are on one side only, great complication ought to exist in the accounts, or a discovery should be required, in order to induce a court of chancery to exercise jurisdiction.    As is said by Mr. Story, "In such a case, if no discovery is asked, or required by the frame of the bill, the jurisdiction will not be maintainable. . . .    For in such case there is not only a complete remedy at law, but there is nothing requiring the peculiar aid of equity to ascertain or adjust the claim.—1 Story's Eq. Jur. § 458.    In *Fowle v. Lawrason,* 5 Pet. 495, Chief-Justice MAR-SHALL, in delivering the opinion of the court, said:    "In all cases in which the action of account would be the proper remedy at law, and in all cases where a trustee is a party, the jurisdiction of a court of equity is undoubted.    It is the proper tribunal.    And in transactions not of this peculiar character, great complication ought to exist in the accounts, and some difficulty should be interposed, or some discovery should be required, in order to induce a court of chancery to exercise jurisdiction."    It was said in *Knotts v. Tarver,* 8 Ala. 743, a leading case on this subject, "that it is not sufficient to give a court of equity jurisdiction that an account

exists between the parties, or that fraud has been practiced; but there must be a discovery wanted in aid of the account, or to disclose the fraud, or the accounts must be so complicated as to require the aid of a court of chancery to adjust them; otherwise, there is a complete remedy at law." In cases where a discovery is not prayed for, the complication must be so alleged in the bill as to show on its face the inadequacy of a remedy at law. The rule stated by Lord Cottenham is: "Where the case is so complicated, or where there are other circumstances where a remedy at law will not give adequate relief, then a court of equity assumes jurisdiction."—*Foley v. Hill*, 2 H. L. Cases, 28. These complications must be substantial and material. The fact that the bill happens to contain a general, vague charge that there are voluminous and intricate accounts between the parties, and this general allegation is inserted merely as a predicate for the purpose of bringing the case within the jurisdiction of a court of equity, the court will not entertain the bill, if demurred to for want of equity. This rule was clearly laid down by Lord Langsdale in *Darthez v. Clemens*, 6 Beavan, 165, and has been followed ever since.—*Vanlier v. Kirkman*, 7 Ala. 217; *Knotts v. Tarver*, 8 Ala. 744; *Dickerson v. Lewis*, 34 Ala. 538; *State v. Bradshaw*, 60 Ala. 238; *County of Dallas v. Timberlake*, 54 Ala. 403; *Lott v. Mobile County*, 79 Ala. 69.

Under the principles above announced, the chancellor should have sustained the 1st, 4th, 5th, 6th, 7th, 8th, 9th and 10th grounds of demurrer.

The other question sought to be raised by the demurrer was, whether the Edison Electric Illuminating Company and the Merchants' Electric Light & Power Company were such corporations as were authorized to be consolidated under the statute. Section 1565 of the Code of 1886 declares that "any two or more mining, quarrying or manufacturing corporations may unite or consolidate their capital stock, property and business, in the manner hereinafter provided." The direct question involved is, whether electric-light companies are manufacturing corporations, and as such are authorized by the statute to consolidate. In view of the rapid development of electricity as a motive power, and considering the many phases in which questions pertaining to this power arise, we do not deem it amiss to decide the question now presented.

The word *manufacture* means the making of anything by hand or artifice.—*L. & N. R. Co. v. Fulgham*, 91 Ala. 555. Mr. Worcester's Dictionary defines *manufacture* as "the pro-

cess of making anything by art, or of reducing materials into a form fit for use by the hand or by machinery." The definition that the word is given by the Century Dictionary is as follows: "The production of articles for use from raw or prepared materials, by giving these materials new forms, qualities, properties or combinations, whether by hand-labor or by machinery." According to the above definitions of the word *manufacture*, we are constrained to consider and declare an electric-light company a manufacturing corporation to all intents and purposes. It is no answer to this argument to say, that electricity exists in a state in nature, and that a corporation engaged in the electric-light business collects or gathers such electricity. This does not fully or exactly express the process by which such corporations are able to make, sell and deliver something useful and valuable. The electricity that exists in nature is of a very different quality from that produced by means of machinery. The business in which an electric-light company is engaged makes it necessary to invest large capital in the plant. Then there is purchased and consumed coal and other materials to produce steam in order to furnish the power for the operation of the machinery. Then there is supplied and operated a complicated system of machinery, like that commonly used in manufacturing establishments, such as boilers, engines, dynamos, shaftings, beltings, &c.; and then, by means of wires, cables and lamps, the mysterious power generated by the machinery used from the materials furnished is transmitted, and lights the streets and private houses. But the electric currents that produce these results can not be said to be "the free gift of nature, gathered from the air or the clouds." It is the produce of capital and labor, and in this respect cannot be distinguished from ordinary manufacturing operations. The collection, storage, preparation for market, and the transportation of ice as found in nature, is not manufacturing; but the production of ice by artificial means is. *People v. Knickerbocker Ice Co.*, 99 N. Y. 181. As well say that a gas company, organized under the corporation laws, is not a manufacturing corporation, because both gas and the electricity generated are the result of artifice. Their purpose is the same, and their transmission is in a similar manner—the one by pipes, and the other by wires. It has been expressly decided that a gas company is a manufacturing corporation.—*Nassau G. L. Co. v. Brooklyn*, 89 N. Y. 409.

When it is attempted to establish the proposition, that the gas which lights one room is a manufactured product, and the electricity which lights another is not, one is obliged

[Freeman v. Brown.]

to rely more on the definition of terms, and the distinctions of scientists, than the actual, practical processes and productions by means of which results in all respects, or at least substantially, the same, are produced. When we take into consideration that the electricity now used and supplied in the ordinary business of life is essentially the product of skill and labor, we can find no difficulty in reaching the conclusion that a corporation engaged in generating, storing, transmitting and selling such electricity is a manufacturing corporation. In reaching this conclusion, we are not without precedent. The very point we have in hand was ably considered in the case of the *People, ex rel., Brush Electric Man. Co. v. Wample*, 129 N. Y. 543. In that case, the Court of Appeals of New York were unanimous in the opinion that the Electric Light Company was a manufacturing corporation.

The City Court judge did not err in overruling the second and third grounds of demurrer.

Reversed and remanded.

